MARTIN O'HARA (SBN 313973)
5155Rosecrans Ave., Suite 250
Hawthorne, CA 90250
Tel: (213) 265-7348
Fax: (213) 289-2940
Email: Martin@Martinoharalaw.com

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| ADNAN AHMAD<br>*Petitioner*,<br><br>v.<br><br>THOMAS GILES, Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement (or his successor); DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; and TODD BLANCHE, Attorney General of the United States, *in their official capacities*<br>*Respondents*. | Case No.: ______________________<br><br>**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241; REQUEST FOR IMMEDIATE RELEASE**<br><br>A# 242-527-213 |

## INTRODUCTION

1. Petitioner Adnan Ahmad is a citizen of Pakistan who was inspected and admitted to the United States on a B-2 visitor visa on October 22, 2025, and whose affirmative application for asylum is pending before U.S. Citizenship and Immigration Services ("USCIS"). USCIS directed him to appear at its Application Support Center in Gardena, California, on October 21, 2026, to give the biometrics his application requires. He appeared as directed. Before his fingerprints could be taken, officers of U.S. Immigration and Customs Enforcement ("ICE") arrested him at that office. He has been detained ever since and is now held at ICE's Los Angeles Field Office holding facility at 300 North Los Angeles Street, Los Angeles, California.

2. The arrest was unlawful on two independent grounds. First, on information and belief, ICE arrested Petitioner without a warrant. An immigration officer may make a warrantless civil arrest only when he has reason to believe the person "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). The Department of Homeland Security ("DHS") itself set the date, time, and place of the appointment weeks in advance; no officer could reasonably believe that a man walking into a USCIS office in response to a USCIS notice was about to escape. Second, Respondents took Petitioner's liberty without notice or any hearing before a neutral decision-maker, although nothing prevented them from providing both before the arrest. Courts in this District have ordered immediate release on each of these grounds in materially identical circumstances. *Qu v. Janecha*, No. 5:26-cv-05419-CTS, slip op. at 7–8 (C.D. Cal. Oct. 9, 2026) (ECF No. 10); *Medina Ardila v. Mullin*, No. 5:26-cv-01761-AJR, slip op. at 5–7 (C.D. Cal. Apr. 20, 2026) (ECF No. 10).

3. Petitioner asks the Court to grant the writ; order his immediate release under the conditions that existed before his arrest; order the return of his passport and other seized documents; and enjoin Respondents from re-detaining him without notice and a pre-deprivation hearing before a neutral decision-maker.

## JURISDICTION

4. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*

5. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A petition challenging a noncitizen's detention without a bond hearing falls within the "core of habeas." *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024).

6. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651. This Petition challenges only the lawfulness of Petitioner's custody. It does not challenge any order of removal, and none exists.

## VENUE

7. Venue is proper because Petitioner is detained at ICE's Los Angeles Field Office holding facility at 300 North Los Angeles Street, Los Angeles, California, which is within the jurisdiction of this District. 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 442–47 (2004). The arrest challenged here also occurred within this District, in Gardena, Los Angeles County. This case is properly assigned to the Western Division because Petitioner is detained, and was arrested, in Los Angeles County. If Respondents transfer Petitioner after this Petition is filed, this Court retains jurisdiction and "may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Padilla*, 542 U.S. at 441 (describing *Ex parte Endo*, 323 U.S. 283 (1944)).

## REQUIREMENTS OF 28 U.S.C. § 2243

8. The Court must grant the petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless the petitioner is not entitled to relief.

28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

9. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

## PARTIES

10. Petitioner Adnan Ahmad is a citizen of Pakistan. He is detained at ICE's Los Angeles Field Office holding facility at 300 North Los Angeles Street, Los Angeles, California, in the custody and under the direct control of Respondents and their agents.

1. Respondent Thomas Giles is sued in his official capacity as the Field Office Director of the Los Angeles Field Office of ICE Enforcement and Removal Operations. Respondent Giles is a legal custodian of Petitioner and has authority to release him. Petitioner is held in the Los Angeles Field Office's own holding facility at 300 North Los Angeles Street, so Respondent Giles is also Petitioner's immediate custodian.

11. Respondent David Venturella is sued in his official capacity as the Acting Director of ICE, the component agency responsible for Petitioner's detention. Respondent Venturella is a legal custodian of Petitioner.

12. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of Homeland Security. In this capacity, he is responsible for the implementation and enforcement of the INA and oversees ICE and USCIS. Respondent Mullin is a legal custodian of Petitioner.

13. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In

that capacity, he oversees the Executive Office for Immigration Review, which administers the immigration courts. Respondent Blanche is a legal custodian of Petitioner.

## EXHAUSTION

14. No statute requires exhaustion of administrative remedies before filing a petition under 28 U.S.C. § 2241. Any exhaustion requirement is prudential, and a court may waive it "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks omitted); *see Aslan v. Semaia*, No. 5:26-cv-02347-MAR, slip op. at 6 (C.D. Cal. June 11, 2026) (ECF No. 14).

15. There is no immigration judge custody decision to appeal. The rule that a detainee challenging an immigration judge's adverse bond determination should ordinarily first appeal to the Board of Immigration Appeals, *see Leonardo v. Crawford*, 646 F.3d 1157, 1160–61 (9th Cir. 2011), has no application here.

16. Petitioner challenges the lawfulness of his arrest and of a detention imposed without any pre-deprivation process. A custody redetermination before an immigration judge would address only whether continued detention is warranted, not whether Petitioner was lawfully taken into custody in the first instance, and it could not supply the remedy those violations require. *See Qu*, slip op. at 2, 8–9 (ordering release of petitioners arrested without a warrant at a USCIS biometrics appointment who had not received a bond hearing, and quoting *Pang v. Warden*, No. 3:26-cv-05047-LEK-JLB, 2026 WL 2925852, at *5 (S.D. Cal. Sept. 29, 2026), for the proposition that bond proceedings "addressed whether Petitioners' continued detention was warranted, not whether Petitioners were lawfully detained in the first instance");* Medina Ardila*, slip op. at 5–7 (ordering release of petitioner arrested at his USCIS asylum interview who had not received a bond hearing). Administrative remedies are therefore inadequate.

17. Requiring exhaustion would also cause irreparable injury. Petitioner's U.S. citizen son was born on August 15, 2026 and was less than ten weeks old when ICE arrested Petitioner. Petitioner's wife, who gave birth less than ten weeks before the arrest, must now care for their newborn without Petitioner during the infant's first months of life. She cannot lawfully work to support the household: her period of authorized stay has expired, and her asylum application, filed in September 2026, has not been pending long enough for her to be eligible to apply for employment authorization. Each day of detention separates Petitioner from his newborn child during a period that cannot be recovered and leaves his wife to care for the infant without his support. A court in this District waived exhaustion on a comparable showing of harm to the petitioner's young child and pregnant wife. *Aslan*, slip op. at 6–7. Petitioner's detention also prevents him from completing the biometrics his asylum application requires.

## STATEMENT OF FACTS

### A. Petitioner Was Lawfully Admitted and Has a Pending Asylum Application.

18. Petitioner is a 32-year-old native and citizen of Pakistan, born in 1994. He is a physician by training.

19. On October 22, 2025, Petitioner was inspected and admitted to the United States at Boston, Massachusetts, as a B-2 nonimmigrant visitor, with an admit-until date of April 21, 2026. Ex. A (Form I-94). He did not enter without inspection.

20. On September 15, 2026, within one year of his arrival, Petitioner timely filed an affirmative Form I-589, Application for Asylum and for Withholding of Removal, with USCIS. Ex. B (Form I-589 Receipt Notice). The application remains pending. Petitioner's wife filed her own application concurrently, and each spouse is listed as a derivative on the other's application.

21. Petitioner lives with his wife and their infant U.S. citizen son in Torrance, California, where the family has lived at the same address since March 2026. Their son was born on August 15, 2026 at Harbor-UCLA Medical Center in Torrance. Ex. D.

22. Petitioner has never been arrested, charged with, or convicted of any crime in any country. He has never before been detained by immigration authorities and has never been placed in removal proceedings before this arrest.

**B. USCIS Summoned Petitioner to a Federal Office, and ICE Arrested Him There.**

23. In connection with his pending asylum application, USCIS issued Petitioner a Form I-797C, ASC Appointment Notice, dated September 29, 2026, directing him to appear at the USCIS Application Support Center at 15715 Crenshaw Blvd., Room B-112, Gardena, California, 90249 on October 21, 2026, at 8:00 am for biometrics collection. Ex. C. The notice warned: "Unless USCIS excuses you based on exceptional circumstances, failure to appear at this biometrics appointment will result in an applicant-caused delay that will impact your eligibility for employment authorization based on your pending asylum application. If you fail to appear at this appointment as scheduled, USCIS: (1) may dismiss your asylum application, if you maintain a lawful basis to remain in the United States; or (2) may refer your application to an immigration judge, if you do not maintain a lawful basis to remain in the United States." *Id.* The notice also instructed Petitioner to bring photo identification, such as a passport. *Id.*

24. Petitioner appeared at the Application Support Center as directed on October 21, 2026.

25. Before Petitioner's biometrics could be collected, ICE officers took him into custody inside the Application Support Center. ICE officers took the passport Petitioner had presented to the USCIS officer.

26. On information and belief, no warrant of any kind, judicial or administrative, had issued for Petitioner's arrest before he was arrested, and no Form I-200, Warrant for Arrest of Alien, was served on him at or before the time of arrest. On information and

belief, no officer made or documented any determination that Petitioner was likely to escape before a warrant could be obtained.

27. Petitioner received no notice before his arrest and no hearing before any neutral decision-maker, before or since. He has not received a bond hearing.

28. Petitioner was transported to ICE's Los Angeles Field Office holding facility at 300 North Los Angeles Street, Los Angeles, California, where he has remained in custody since October 21, 2026. No order of removal exists.

29. Because ICE arrested Petitioner before his fingerprints were taken, he was unable to complete the biometrics that USCIS required for his asylum application. Ex. C.

## LEGAL FRAMEWORK

### A. Petitioner Is Detained, If at All, Under 8 U.S.C. § 1226(a).

30. Petitioner was inspected and admitted. He is not an applicant for admission or an arriving alien, and no provision of 8 U.S.C. § 1225 governs his custody. A noncitizen who remains beyond the period of authorized stay is deportable under 8 U.S.C. § 1227(a)(1)(B). Petitioner has no criminal history and falls within no category of 8 U.S.C. § 1226(c). Any authority to detain him arises under 8 U.S.C. § 1226(a).

31. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The provision "applies to aliens already present in the United States" and "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest." *Jennings v. Rodriguez*, 583 U.S. 281, 302–03 (2018) (as quoted in *Matter of Q. Li*, 29 I&N Dec. 66, 70 (BIA 2025)). As the Board of Immigration Appeals has recognized, the implementing regulation "authorizes a prospective arrest and contemplates that the subject of the warrant has not yet been arrested and taken into custody at the time the warrant is issued." *Q. Li*, 29 I&N Dec. at 69 n.4 (citing 8 C.F.R. § 236.1(b)(1)).

**B. Warrantless Immigration Arrests Are Narrowly Limited.**

32. Absent a warrant, an immigration officer may arrest a noncitizen only "if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). The implementing regulation, which "must be adhered to by every immigration officer involved in enforcement activities," provides that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8; *id.* § 287.8(c)(2)(ii).

33. The Supreme Court has summarized the structure this way:

> If no federal warrant has been issued, those officers have more limited authority. See 8 U.S.C. § 1357(a). They may arrest an alien for being "in the United States in violation of any [immigration] law or regulation," for example, but only where the alien "is likely to escape before a warrant can be obtained." § 1357(a)(2).

*Arizona v. United States*, 567 U.S. 387, 407–08 (2012) *quoted in Qu*, slip op. at 6–7.

**C. The Due Process Clause Protects Petitioner's Liberty.**

34. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. "[T]he government's discretion to incarcerate noncitizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

35. Courts determine what process is due by weighing (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying *Mathews* to a constitutional challenge to detention under § 1226(a)). As a general rule, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).

## CLAIMS FOR RELIEF

## COUNT ONE

### Unlawful Warrantless Arrest and Resulting Detention

### (8 U.S.C. §§ 1226(a), 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii))

36. The allegations in the above paragraphs are realleged and incorporated herein.

37. On information and belief, Respondents arrested Petitioner without a warrant.

38. No officer could have had reason to believe that Petitioner was likely to escape before a warrant could be obtained. DHS directed Petitioner, weeks in advance and in writing, to appear at a specific DHS office on a specific date and at a specific time, and he appeared voluntarily to pursue an application he had filed with DHS. As a court in this District found on materially identical facts, "Respondents knew exactly where and when to find Petitioners, and had no excuse for not obtaining a warrant in advance. Petitioners were not encountered unexpectedly somewhere under unforeseen circumstances that Respondents could not have planned for and which might have made it likely that Petitioners would escape before a warrant could be obtained." *Qu*, slip op. at 7.

39. Because the arrest was unlawful, the detention that flows from it is unlawful, and the appropriate remedy is release, not a belated bond hearing. *Qu*, slip op. at 8 (quoting *Mejia v. Warden*, No. ED CV 26-5705-E, 2026 WL 3019449, at *2 (C.D. Cal. Oct. 7,

2026): "A belated bond hearing would not remedy the federal law violations Petitioner unjustifiably has suffered. The most appropriate remedy for these violations is to release Petitioner from detention immediately."). *See also Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, Dkt. 738, at 53–54 (C.D. Cal. Sept. 2, 2026) (preliminarily enjoining warrantless civil immigration arrests in this District without a "prearrest individualized determination" of likelihood of escape, and holding that "[m]ere presence within the United States in violation of United States immigration law is not, by itself, sufficient"), *appeal docketed*, No. 26-6891 (9th Cir. Oct. 16, 2026).

40. For these reasons, Petitioner's arrest and detention violate 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii).

## COUNT TWO

### Violation of the Fifth Amendment Right to Procedural Due Process

41. The allegations in the above paragraphs are realleged and incorporated herein.

42. Petitioner has a substantial liberty interest in remaining free from detention. He was lawfully admitted, lived openly with his wife and infant son at a known address, and was actively pursuing an asylum application that DHS directed him to advance. *See Medina Ardila*, slip op. at 6 (finding a substantial liberty interest based on the life the petitioner built in the United States with his partner and child).

43. The risk of erroneous deprivation is high. No neutral decision-maker has ever found that Petitioner poses a danger or a flight risk, and the record forecloses either finding. He has no criminal history, and he was arrested at the moment he was voluntarily complying with a DHS directive. That his authorized stay expired does not suggest otherwise: a visa overstay "bear[s] little if any relevance" to whether a noncitizen will appear for proceedings, and prior lawful status reduces the risk of flight. *Aslan*, slip op. at 12–13 (quoting *Matter of Patel*, 15 I&N Dec. 666, 666–67 (BIA 1976), and citing *Matter of R-A-V-P-*, 27 I&N Dec. 803, 805 (BIA 2020)).

44. The government's interest in arresting Petitioner without prior process was minimal. DHS chose the time and place of the encounter and could readily have provided notice and a hearing first.

45. A court in this District has held that a noncitizen's arrest by ICE at his USCIS asylum interview, without notice or a pre-deprivation hearing, violated procedural due process and required release to restore the status quo. *Medina Ardila*, slip op. at 5–7. The same result follows here.

46. Due process also requires notice and a pre-deprivation hearing before any re-detention, at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger. *Id.* at 7–9; *Aslan*, slip op. at 16–18 (entering a permanent injunction against re-detention without notice and a pre-deprivation hearing after applying the *eBay* factors). Absent such relief, nothing would prevent Respondents from repeating the same unlawful arrest at Petitioner's next USCIS appointment.

47. For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests that this Court:

(a) Assume jurisdiction over this matter;

(b) Declare that Petitioner's arrest and detention violate 8 U.S.C. §§ 1226(a) and 1357(a)(2), 8 C.F.R. § 287.8(c)(2)(ii), and the Due Process Clause of the Fifth Amendment;

(c) Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately, and in any event within 24 hours, under the conditions that existed before his arrest and without imposing any new conditions;

(d) Order Respondents to file with their return, as part of "certifying the true cause of the detention," 28 U.S.C. § 2243, the Form I-213 and all other records

documenting Petitioner's arrest, and any warrant of arrest (Form I-200) issued before the arrest;

(e) Order Respondents to return Petitioner's passport and all other property and documents seized in connection with his arrest and detention;

(f) Enjoin Respondents from re-detaining Petitioner without at least seven days' notice and a pre-deprivation hearing before an immigration judge at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure his appearance and the safety of the community;

(g) Enjoin Respondents from transferring Petitioner outside the Central District of California while this Petition is pending;

(h) Order Respondents to file a notice of compliance within 24 hours of the Court's order certifying Petitioner's release and the return of his property and documents;

(i) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and on any other basis justified under law; and

(j) Grant any further relief this Court deems just and proper.

Dated: October 22, 2026

Respectfully submitted,

/s/ Martin O'Hara
Martin O'Hara
Attorney for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I am the attorney for Petitioner Adnan Ahmad and submit this verification on his behalf. I have discussed the events described in this Petition with Petitioner and with his wife, and I have reviewed the documents attached as Exhibits A through D. On that basis, I verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge, information, and belief.

Executed on October 22, 2026, at Hawthorne, California.

/s/ Martin O'Hara
Martin O'Hara