UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADNAN AHMAD,<br>Petitioner,<br>v.<br>THOMAS GILES, et al.,<br>Respondents. | Case No. 2:26-cv-12348 ADS<br><br>ORDER GRANTING PETITION IN PART |

## I. **INTRODUCTION**

Petitioner Adnan Ahmad filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention, among other relief. (Dkt. No. 1.) Petitioner also filed Exhibits. (Dkt. No. 3.) Petitioner filed a First Amended Petition. (Dkt. No. 7.) Respondents filed a Response to the First Amended Petition. (Dkt. No. 10.) Petitioner filed a Reply in support of the First Amended Petition. (Dkt. No. 11.) Petitioner also filed an Amended Reply in support of the First

Amended Petition. (Dkt. No. 12.) For the reasons discussed below, the Petition is granted in part.

## II. FACTUAL BACKGROUND

According to the Amended Petition, Petitioner is a native of Pakistan who entered the United States on October 22, 2025. (Dkt. No. 7 at 6.) Petitioner, a physician, and his wife entered the United States on a B-2 nonimmigrant temporary visitor visa. (Id.) Petitioner's visitor visa expired on April 21, 2026. (Dkt. No. 3 at 5.) On August 15, 2026, Petitioner had a male child at Harbor-UCLA Medical Center. (Dkt. No. 7 at 6.) Petitioner later applied for asylum on September 15, 2026, and the application is under consideration. (Dkt. No. 3 at 7.) On September 29, 2026, Petitioner received a letter from immigration officials requiring his attendance at a scheduled biometrics appointment related to his asylum application. (Dkt. No. 3 at 9.) On October 21, 2026, Petitioner attended this appointment and was detained by immigration officials. (Dkt. No. 7 at 7.) On October 21, 2026, Petitioner also received an initial custody determination. (Dkt. No. 10-1 at 13.) Petitioner was not released and Petitioner requested a review of the custody determination by an immigration judge ("IJ"). (Id.) He filed the Amended Petition the next day. (Dkt. No. 7.) Petitioner alleges he was detained without prior notice or a hearing. (Id. at 8.)

Petitioner alleges that, prior to his immigration detention, he lived with his wife and their infant son. (Id. at 6.) Petitioner further alleges that he has no criminal history. (Id. at 7.) Petitioner has not yet received an individualized bond hearing to assess whether his detention is warranted due to danger or flight risk. (Dkt. No. 7 at 11.) Petitioner's removal proceedings are currently pending. (Dkt. No. 10-1 at 7.)

## III. SUMMARY OF BRIEFING

Petitioner seeks habeas relief from immigration detention. Specifically, Petitioner alleges the following grounds for relief: (1) a warrantless arrest in violation of applicable statutes and regulations; and (2) a violation of the due process clause due to a lack of pre-deprivation notice and hearing. (Dkt. No. 7 at 10-12.) Petitioner requests immediate release from immigration custody, a return of his personal belongings, and an injunction preventing his re-detention without pre-deprivation notice and a hearing. (Id. at 12-13.) Petitioner also requests declaratory relief. (Id. at 12.)

Respondents filed a Response, arguing that Petitioner appears to be entitled to receive an initial bond hearing. (Dkt. No. 10 at 3-4.) Respondents further argue that Petitioner is properly detained pending a bond proceeding because this is his first detention. (Id. at 2-3.) Respondents emphasize that Petitioner does not have a heightened liberty interest because this is his first detention for overstaying his visa. (Id.) Respondents also provide a copy of an arrest warrant. (Dkt. No. 10-1 at 11.)

Petitioner filed an Amended Reply, reiterating that he has not received the bond hearing he is entitled to. (Dkt. No. 12 at 19.) Petitioner argues that he is entitled to pre-deprivation due process. (Id. at 6.) Petitioner also argues that the arrest warrant produced by Respondents was only created after the arrest. (Id. at 14-15.)

## IV. DISCUSSION

### A. Violation of Petitioner's Procedural Due Process Rights

Petitioner alleges a violation of the Due Process Clause of the Fifth Amendment. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const. amend. V. It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful,

unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001); Reno v. Flores, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in [removal] proceedings."); Trump v. J.G.G., 604 U.S. 670, 673 (2025) (same). There is no question that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." Demore v. Kim, 538 U.S. 510, 523 (2003). In the expedited removal context, a noncitizen has the "fundamental due process right[]" to receive "notice of the charge" they face and an "opportunity to respond to that charge." United States v. Raya-Vaca, 771 F.3d 1195, 1204 (9th Cir. 2014), abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025), cert. denied, No. 25-972, 2026 WL 1513330 (U.S. June 1, 2026) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

To determine the procedures to which Petitioner is entitled, the Court applies the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). See Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation omitted); see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"). Under the Mathews test, courts weigh "(1) the nature of the private interest at stake; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interests." Vatadi v. Bowen, No. 5:26-cv-00098 MRA (SSC), 2026 WL 712595, at *3 (C.D. Cal. Feb 12, 2026), modified, 2026 WL 530750 (C.D. Cal. Feb. 20, 2026) (citing Mathews, 424 U.S. at 319).

First, the Court considers Petitioner's private interest in remaining out of immigration custody. As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process. See Zadvydas, 533 U.S. at 693. Petitioner is an asylum seeker and his wife and United States born child live here. (Dkt. No. 7 at 6.) However, Petitioner has only resided in the United States since October 22, 2025. (Dkt. No. 7 at 6.) Further, Petitioner's liberty interest is lessened because he has not been authorized to reside in the United States since his temporary visitor visa expired on April 21, 2026. (Dkt. No. 3 at 5.) Petitioner overstayed his temporary visitor visa and then applied months later for asylum, despite the fact that his temporary visitor visa was conditioned on his guarantee that he did not intend to permanently reside in the United States.[1] See Elkins v. Moreno, 435 U.S. 647, 665 (1978) (explaining that visitor visas are expressly conditioned on nonimmigrant intent). Further, Petitioner's pending asylum application does not prevent the government from initiating removal proceedings. See 8 C.F.R. § 208.3(c)(1) (explaining that an asylum application itself can be used as a basis to initiate the removal of a noncitizen). These circumstances warrant a lessened liberty interest.

As ample district courts have concluded, Petitioner, as a visa overstay, does not have the strong liberty interest that may be applicable to other noncitizens who have previously been detained and then released by immigration officials. See Wan v. Mullin, No. 5:26-CV-5352-RAO, 2026 WL 2886399, at *3 (C.D. Cal. Sept. 25, 2026) (holding that the lessened liberty interest of a noncitizen who overstayed their visa entitled them

---

[1] The Petition indicates that the immigration status of Petitioner's wife is similarly situated. (Dkt. No. 7 at 6.)

to bond, not release); see Shayakhmet v. Warden, No. 5:26-CV-04125-SSC, 2026 WL 2299467, at *2 (C.D. Cal. Aug. 10, 2026) (same); see also Ma v. Warden, No. 5:26-CV-4689-SSC, 2026 WL 3254576, at *4 (C.D. Cal. Sept. 25, 2026) (collecting cases). Petitioner's detention under 8 U.S.C. § 1226(a) already offers procedural safeguards, such as an entitlement to an initial custody determination, a bond hearing upon request, and further bond hearings upon a showing of changed circumstances.[2] See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207-09 (9th Cir. 2022) (explaining the process that 8 U.S.C. § 1226(a) detainees are entitled to by statute and implementing regulations). Accordingly, Petitioner establishes a liberty interest in remaining out of immigration custody.

Second, the Court considers the risk of erroneous deprivation. Here, Petitioner received an individual custody determination on the day of his arrest and filed the Amended Petition only one day later. Accordingly, not enough time had passed for a bond hearing to be scheduled and for Petitioner to exhaust this administrative remedy. The risk of erroneous deprivation is less significant in this circumstance. However, there is some risk of erroneous deprivation because Respondents have not alleged that Petitioner is scheduled to receive a bond hearing before an immigration judge. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to

---

[2] The Ninth Circuit has affirmed that noncitizens like Petitioner who are present without admission and are detained in the interior of the United States are subject to 8 U.S.C. § 1226(a). See Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026) ("[W]e conclude that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)."); but see Sosnava Rodriguez v. Vergara, No. 26-50183, 2026 WL 3181188, at *6 (5th Cir. Oct. 23, 2026) (holding such noncitizens are subject to 8 U.S.C. § 1225(b)(2)(A)).

determine whether there is any valid basis for [the petitioner's] detention"). The risk of erroneous deprivation can be adequately mitigated if Petitioner receives the bond hearing he is entitled to under 8 U.S.C. § 1226(a).

Third, the Court considers the government's interest in Petitioner's detention. The enforcement of the United States's immigration laws is a legitimate government interest. However, civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to serve the purposes of the statute and reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)). Respondents do not have a countervailing interest in detaining Petitioner without providing a bond hearing.

Under Mathews, Petitioner is entitled to a hearing in which his flight risk and danger to the community is evaluated. Further, Petitioner is already entitled to a bond hearing as a detainee under 8 U.S.C. § 1226(a). See Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1167 (9th Cir. 2026) ("Although DHS makes the initial custody determination, aliens subject to § 1226(a) can seek bond hearings before an immigration judge (IJ) and further review in the Board of Immigration Appeals (BIA).") (citations omitted). Accordingly, Petitioner is entitled to a bond hearing.

**B. Unlawful Arrest**

Petitioner contends that he was illegally detained in violation of applicable statutes and regulations because of a warrantless arrest. (Dkt. No. 7 at 10-11.) The Ninth Circuit has repeatedly held that "defects in an arrest are not cognizable in habeas corpus." Streeter v. Craven, 418 F.2d 273, 274 (9th Cir. 1969) (holding that a defective arrest does not warrant habeas corpus relief from a state conviction); see also Alvarez-Mendez v. Stock, 941 F.2d 956, 960 (9th Cir. 1991) ("Because this case involves a petition for the writ of habeas corpus, and not a claim for damages for illegal detention, the only issue before us is whether [the petitioner's] detention is illegal today."). As long as sufficient ground for present detention is shown, a petitioner should not ordinarily be released for defects in the original arrest. See United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 158 (1923) ("A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody. . ."); see also Mendez v. Warden, No. 5:26-CV-03901-DOC-SK, 2026 WL 2449572, at *3 (C.D. Cal. Aug. 20, 2026) (holding an improper arrest did not justify a noncitizen's release because the noncitizen's present detention was authorized by 8 U.S.C. § 1226(a)); see also Hernandez v. Facility Adm'r, No. EDCV 26-3988-DMG (AS), 2026 WL 2525600, at *3 (C.D. Cal. Aug. 26, 2026) (same, but as to a 8 U.S.C. § 1231(a) detainee). For habeas purposes, it is "immaterial" whether a petitioner was taken into custody prior to the issuance of an arrest warrant. Sormunen v. Nagle, 59 F.2d 398 (9th Cir. 1932) (holding a warrantless arrest does not entitle a noncitizen to habeas relief).

Petitioner alleges that he was unlawfully detained without any warrant. (Dkt. No. 7 at 10-11.) While Respondents produced an arrest warrant, Petitioner argues that

no arrest warrant existed at the time of the arrest. Dkt. No. 12 at 14-15.) However, the Ninth Circuit has explicitly held that whether a noncitizen was taken into immigration custody prior to the issuance of an arrest warrant is "immaterial" in a writ for habeas corpus. Sormunen, 59 F.2d 398. Further, as discussed above, Petitioner's present detention is authorized by 8 U.S.C. § 1226(a) because he is a noncitizen present without admission as a visa overstay. The circumstances of Petitioner's arrest alone do not support habeas relief in this instance given that Petitioner's detention pending removal proceedings is authorized under 8 U.S.C. § 1226(a).[3] See Medina v. Warden, No. 5:26-CV-05034-PA-SK, 2026 WL 2660007, at *1 n.1 (C.D. Cal. Sept. 8, 2026) ("Contrary to the claims in the current petition, the circumstances around petitioner's arrest alone are not enough to justify unconditional release from custody under § 2241.") (citing, among other cases, Wolck v. Weedin, 58 F.2d 928, 930 (9th Cir. 1932)). This ground is denied.

**C. Remedy**

In light of the above analysis, the only remaining question before the Court is the appropriate remedy. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." Lujan v. Garcia, 734 F.3d 917, 933 (9th Cir. 2013) (citing Hilton v. Braunskill, 481 U.S. 770, 775 (1987)). A bond hearing, as opposed to release, is the appropriate remedy when a noncitizen is present without admission or is a visa overstay and is now detained for the first time under 8 U.S.C. §

[3] As the Court in Mendez emphasized, this "is not to imply that an unlawful arrest is acceptable or condoned—it is only to recognize that release on habeas corpus is not ordinarily the correct remedy for such a defect." 2026 WL 2449572, at *3 n.2 (citations omitted). An improper arrest may entitle Petitioner to remedies in removal proceedings, among other kinds of remedies. See id. (listing potential remedies resulting from an unlawful arrest).

1226(a). See Mendez v. Warden, No. 5:26-CV-03901-DOC-SK, 2026 WL 2449572, at *2 (C.D. Cal. Aug. 20, 2026) (explaining that a bond hearing "is the remedy which courts—including in this district—have regularly ordered where, as here, the detainee was never previously released on bond or parole but was entitled to receive a detention hearing with an immigration judge.") (collecting cases); see also Wan, 2026 WL 2886399, at *3 (ordering a bond hearing when a noncitizen overstayed their visa and was subsequently detained).

Here, Petitioner is entitled to a bond hearing because he is a 8 U.S.C. § 1226(a) detainee who has not previously been released by immigration officials.[4] However, Petitioner has already administratively requested a bond hearing, (Dkt. No. 10-1 at 13.) Because at the time of this order it is not clear if a bond hearing has already occurred or if a bond hearing is scheduled, the Court will grant a bond hearing only under the condition that no bond hearing has yet occurred.

## V. CONCLUSION

IT IS THEREFORE ORDERED that:

1) The Petition is granted in part;

2) If Petitioner Adnan Ahmad (A# 242-527-213) has not yet received a 8 U.S.C. § 1226(a) bond hearing, he must be provided with an individualized bond hearing before an immigration judge within 7 days of the date of this Order; and

---

[4] To the extent Petitioner requests that this bond hearing should be ordered to occur under a heightened evidentiary standard, the Ninth Circuit has explicitly cautioned against such an order. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1214 (9th Cir. 2022) ("And we note that even when there are deficiencies in individual § 1226(a) proceedings, they may be redressable through means short of major changes to the burden of proof.") Petitioner has not alleged any facts to support a rare circumstance where a heightened evidentiary standard is appropriate.

3) Judgment shall be entered accordingly.

Dated: November 9, 2026

/s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge